ORIGINAL

# In the United States Court of Federal Claims

FILED

No. 14-565C

(Filed: February 20, 2015)

FEB 20 2015

U.S. COURT OF
FEDERAL CLAIMS

************************************ )  Military pay claim; time-bar attributable
)  to expiration of the limitations period
**WILLIAM E. STRAUGHTER,**  )  specified in 28 U.S.C. § 2501; inability
)  to transfer case under 28 U.S.C. § 1631
        **Plaintiff,**  )  because of request for monetary relief
)
    **v.**  )
)
**UNITED STATES,**  )
)
        **Defendant.**  )
)
************************************ )

William E. Straughter, *pro se*, Long Beach, California.

Joshua D. Schnell, Trial Attorney, Commercial Litigation Branch, Civil Division,
United States Department of Justice, Washington, D.C., for defendant.  With him on the brief
were Joyce R. Branda, Acting Assistant Attorney General, Robert E. Kirschman, Jr., Director,
and Martin F. Hockey, Assistant Director, Commercial Litigation Branch, Civil Division,
United States Department of Justice, Washington, D.C.

## OPINION AND ORDER

LETTOW, Judge.

      Plaintiff, William E. Straughter, seeks review of a decision by the Air Force Board for
Correction of Military Records ("Correction Board" or "the Board") denying him reinstatement
in the United States Air Force ("Air Force").  Mr. Straughter contends that the Board's decision
was arbitrary, capricious, unsupported by substantial evidence, or contrary to law.  Pending
before the court is the government's motion to dismiss for lack of subject matter jurisdiction and
failure to state a claim upon which relief may be granted pursuant to Rules 12(b)(1) and 12(b)(6)
of the Rules of the Court of Federal Claims ("RCFC"), and, in the alternative, a motion for
judgment upon the administrative record pursuant to RCFC 52.1.

## FACTS[1]

Mr. Straughter served in the Air Force for over 17 years, from 1972 until his honorable discharge in 1989. Compl. at 2, 4. The case now before the court ostensibly arises from events that occurred in 1987, prior to the end of his last enlistment period. Compl. at 4. At that time, Mr. Straughter allegedly received by mail a preapproved application for a credit card from Military and Professional Service Organization ("MPSO") listing his name, address, and rank and requesting that he supply some additional personal information including his social security number, phone number, and date of birth, and return the application. Compl. at 2. Mr. Straughter completed the application but neglected to change the rank listed from "O-2" (1st Lieutenant) to "E-5" (Staff Sergeant), his correct rank. Compl. at 2; *see also* AR 11.[2] He alleges that he did not submit the application but rather placed it in his desk drawer, where it remained forgotten for a few months until he eventually cleaned his desk and discarded it. Compl. at 2. On June 3, 1988, Mr. Straughter was notified that the application had been presented to his commander, who planned to impose nonjudicial punishment against him under Article 15 of the Uniform Code of Military Justice ("UCMJ"), 10 U.S.C. § 815,[3] for his impersonation of an officer or agent of superior authority under 10 U.S.C. § 934 ("Article 134"). Compl. at 2.[4] Ultimately, on July 5, 1988, his commander found that Mr. Straughter attempted to wrongfully and willfully impersonate a commissioned officer and "imposed a punishment of

---

[1]The court's findings of fact are based on the Administrative Record of the proceedings before the Correction Board. *See Bannum, Inc. v. United States*, 404 F.3d 1346, 1357 (Fed. Cir. 2005) ("[T]he [c]ourt . . . is required to make factual findings under [what is now RCFC 52.1] from the record evidence as if it were conducting a trial on the record.").

[2]"AR___" refers to the Administrative Record, ECF No. 9-1, filed by the government pursuant to RCFC 52.1(a).

[3]Nonjudicial punishment refers to specific limited punishment which may be awarded for minor disciplinary offenses by a commanding officer or superior to members of the pertinent command. In the Air Force, such punishment is termed "Article 15" in reference to Article 15 of the UCMJ, which, along with Part V of the Manual for Courts-Martial, constitutes the basic law governing procedures for nonjudicial punishment. *See* AR 28 ("Fact Sheet Article 15 Information").

[4]Article 134 is a general article that provides in pertinent part:

Though not specifically mentioned in this chapter, all disorders and neglects to the prejudice of good order and discipline in the armed forces, all conduct of a nature to bring discredit upon the armed forces, and crimes and offenses not capital, of which persons subject to this chapter may be guilty, shall be taken cognizance of by a general, special, or summary court-martial, according to the nature and degree of the offense, and shall be punished at the discretion of that court.

10 U.S.C. § 934.

reduction in grade from staff sergeant to sergeant [*sic* – senior airman (E-4)] with extra duty for 3 hours a day for 14 days." Compl. at 3-4. Thus, then-Staff Sergeant Straughter was found to have violated 10 U.S.C. § 880 (Attempts), not Article 134. Compl. at 3; *see also* AR 2. Subsequently, despite the fact that Mr. Straughter's supervisor recommended him for reenlistment, on December 30, 1988, due to the nature and outcome of his Article 15 offense, Mr. Straughter's commander did not select him. Compl. at 4; *see also* AR 2. Mr. Straughter appealed his commander's decision to the Deputy Assistant Secretary of Manpower, Resources & Military Personnel but his appeal was denied and he was honorably discharged from the Air Force on July 10, 1989. Compl. at 4; *see also* AR 3.

On July 26, 1995, Mr. Straughter sought review by the Air Force Board for Correction of Military Records, requesting reinstatement so he could serve 20 years before retiring. Compl. at 4-5; *see* Def.'s Mot. to Dismiss and, in the Alternative, Mot. for Judgment upon the Admin. Record ("Def's Mot.") at 2, ECF No. 10. The basis for Mr. Straughter's request was his belief that the denial of his right to reenlist constituted double jeopardy under the Fifth Amendment because he had already received non-judicial punishment for the same Article 15 offense. Compl. at 4-5; *see also* Def.'s Mot at 2-3. His request was denied. AR 5 (Record Proceedings by Board (Aug. 28, 1996)). In its decision, the Board explained that Mr. Straughter's double jeopardy argument lacked merit because "[t]he same offense may give rise both to action under the military justice system and administrative action . . . without triggering the constitutional prohibition on double jeopardy." AR 4. One member of the Board voted to grant but did not submit a minority report. AR 5.

In October 2012, Mr. Straughter asked the Board to reconsider his request for reinstatement. Def.'s Mot. at 3 (citing AR 47 (Letter from Michael F. LoGrande, Executive Director, Air Force Board for Correction of Military Records (Mar. 26, 2013))). On March 26, 2013, the Board denied his request on the grounds that Mr. Straughter failed to present any newly discovered relevant evidence. *Id.* The following month, on April 23, 2013, Mr. Straughter again appealed to the Board, citing the additional facts that the credit card application that prompted the incident in 1987 had never been submitted or signed. Compl. at 5. The Board denied Mr. Straughter's request, noting that "reconsideration of a previously denied application is authorized only where newly discovered relevant evidence is presented which was not reasonably available when the application was originally submitted." AR 75.

Mr. Straughter filed his complaint in this court on July 2, 2014. Compl. at 1. Mr. Straughter requests declaratory relief, or, in the alternative, injunctive relief, in addition to monetary damages, including "all back pay[] and future military retirement entitlements" of an amount "exceeding $10,000." Compl. at 1, 8. The government has filed a motion to dismiss for lack of subject matter jurisdiction and, in the alternative, a motion for judgment upon the administrative record. Def.'s Mot. at 1.

## ANALYSIS

### A. Subject Matter Jurisdiction

Before addressing the merits, a "court must satisfy itself that it has jurisdiction to hear and decide a case." *Hardie v. United States*, 367 F.3d 1288, 1290 (Fed. Cir. 2004) (quoting *PIN/NIP, Inc. v. Platte Chem. Co.*, 304 F.3d 1235, 1241 (Fed. Cir. 2002) (citing *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 115 F.3d 962, 963 (Fed. Cir. 1997))). In evaluating a motion to dismiss for lack of subject matter jurisdiction, the court will ordinarily "consider the facts alleged in the complaint to be true and correct." *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Air Prod. & Chems., Inc. v. Reichhold Chems., Inc.*, 755 F.2d 1559, 1562 n.4 (Fed. Cir. 1985)). However, when the court's subject matter jurisdiction has been called into question by a motion filed under RCFC 12(b)(1), the burden of establishing the court's jurisdiction rests upon the party seeking to invoke it, *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936), and this burden must be proven by a preponderance of the evidence, *Reynolds*, 846 F.2d at 748 (citing *Zunamon v. Brown*, 418 F.2d 883, 886 (8th Cir. 1969) (quoting *McNutt*, 298 U.S. at 189, and citing *Jascourt v. United States*, 521 F.2d 1406 (Ct. Cl. 1975))).

Mr. Straughter premises this court's jurisdiction on the Tucker Act. Compl. at 1. The Tucker Act grants this court "jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). However, the Tucker Act alone does not create a substantive right to relief. *See United States v. Testan*, 424 U.S. 392, 398 (1976); *Martinez v. United States*, 333 F.3d 1295, 1302-03 (Fed. Cir. 2003) (en banc). Rather, "[a] substantive right must be found in some other source of law." *United States v. Mitchell*, 463 U.S. 206, 216 (1983) (en banc). In essence, the Tucker Act waives the government's sovereign immunity with respect to claims deriving from a money-mandating source of law. *See Testan*, 424 U.S. at 400-01. Accordingly, to establish that this court has subject matter jurisdiction under the Tucker Act, the plaintiff must first point to an independent, substantive source of law that mandates payment from the United States for the injury suffered. *Id.* at 400; *see also Ferreiro v. United States*, 501 F.3d 1349, 1351-52 (Fed. Cir. 2007) (quoting *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc in relevant part)).

Although not directly invoked by Mr. Straughter, the Military Pay Act, codified at 37 U.S.C. § 204, serves as the independent, money-mandating provision that enables him to bring his wrongful discharge claim within the court's Tucker Act jurisdiction. *See Martinez*, 333 F.3d at 1303 ("In the context of military discharge cases, the applicable 'money-mandating' statute that is generally invoked is the Military Pay Act, 37 U.S.C. § 204 .... [A] plaintiff therefore must allege that, because of the unlawful discharge, the plaintiff is entitled to money in the form of the pay that the plaintiff would have received but for the unlawful discharge."). In monetary actions brought under the Tucker Act, this court has the authority to review the actions of correction boards and grant relief if the court finds that the correction board's decision was "arbitrary, capricious, unsupported by substantial evidence, or contrary to law." *Id.* at 1314 (citing *Porter v. United States*, 163 F.3d 1304, 1311 (Fed. Cir. 1998); *Armstrong v. United States*, 205 Ct. Cl. 754, 761 (1974)).

4

In this instance, although the court would ordinarily have authority to adjudicate Mr. Straughter's claims, *see Mitchell v. United States*, 930 F.2d 893, 896 (Fed. Cir. 1991) (noting that this court has "extensive experience reviewing decisions of correction[] boards in military pay cases"), it must consider the effect of the applicable statute of limitations. Under 28 U.S.C. § 2501, claims under the Tucker Act are subject to a six-year statute of limitations, and that limitation serves as a condition of the government's waiver of sovereign immunity and constitutes a jurisdictional requirement. *See John R. Sand & Gravel Co. v. United States*, 552 U.S. 130 (2008). Section 2501 provides that "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501. A claim first accrues "when all the events have occurred that fix the alleged liability of the government and entitle the claimant to institute an action." *Ingrum v. United States*, 560 F.3d 1311, 1314 (Fed. Cir. 2009); *see also Oceanic S.S. Co. v. United States*, 165 Ct. Cl. 217, 225 (1964). In a wrongful discharge case, a cause of action for back pay accrues at the time of discharge. *See Martinez*, 333 F.3d at 1314. Mr. Straughter was honorably discharged on July 10, 1989, almost twenty-five years before he filed his complaint on July 2, 2014. Compl. at 4. Because Mr. Straughter did not file his complaint within the six-year statute of limitations period, the court does not possess jurisdiction to entertain his claims. *See John R. Sand*, 552 U.S. at 133-34 (holding that the Tucker Act's statute of limitations falls under the category of an "absolute[] kind of limitations period" and cannot be tolled or waived by equitable considerations); *see also Young v. United States*, 529 F.3d 1380, 1384 (Fed. Cir. 2008) (applying *John R. Sand* in a military discharge case brought under the Tucker Act and 37 U.S.C. § 204).

Notably, Mr. Straughter's resort to the Correction Board does not influence or affect the date of accrual of his claims. In *Martinez*, the Federal Circuit addressed a similar circumstance where a plaintiff sought both reinstatement and an award of lost pay after a correction board refused to expunge an Article 15 proceeding from his military record and void his discharge from active duty. 333 F.3d 1295. Declining to overrule its decision in *Hurick v. Lehman*, 782 F.2d 984 (Fed. Cir. 1986),[5] the Federal Circuit emphasized that requests made to correction boards are regarded as permissive administrative remedies and are not mandatory prerequisites to filing suit under the Tucker Act for wrongful discharge. *See Martinez*, 333 F.3d at 1306 ("Congress did not authorize postponement of the running of the limitations period while optional administrative remedies were being exhausted."). The court explained,

> At the time of his separation, [the plaintiff] had a right to sue for improper discharge and to obtain money if he could prove his case. At the time the correction board acted, he still had that right. The injury caused by the separation was not altered or exacerbated by the correction board action.

*Id.* at 1314. Therefore, the fact that Mr. Straughter first sought a decision by the Board and then reconsideration of the Board's decision prior to filing a case in this court has no bearing on the date of accrual of his claims. The date of his discharge is the proper date of accrual because that was the date "when all the events [had] occurred that fix[ed] the alleged liability of the

---

[5]The court in *Hurick* held that the proper date of accrual of a wrongful discharge claim brought by a former serviceman of the Navy was the date of discharge. 782 F.2d at 986.

government and entitle[d] [him] to institute an action." *Ingrum*, 560 F.3d at 1314; *see also Martinez*, 333 F.3d at 1314.

In sum, the court does not have jurisdiction over Mr. Straughter's claims.[6]

*B. Possibility of Transfer*

While dismissal is typically required as a matter of law if a court lacks jurisdiction to decide the merits of a case, *see Johnson v. United States*, 105 Fed. Cl. 85, 91 (2012), under certain circumstances, the court may transfer the action to a federal court that would have jurisdiction, *see Gray v. United States*, 69 Fed. Cl. 95, 98 (2005). Pursuant to 28 U.S.C. § 1631, transfer of a case is appropriate if "(1) the transferor court lacks jurisdiction; (2) the action could have been brought in the transferee court at the time it was filed; and (3) transfer is in the interest of justice." *Zoltek Corp. v. United States*, 672 F.3d 1309, 1314 (Fed. Cir. 2012); *see also Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 819 (1988); *Skillo v. United States*, 68 Fed. Cl. 734, 744 (2005) (citing *Kolek v. Engen*, 869 F.2d 1281, 1284 (9th Cir. 1989); *Rodriguez v. United States*, 862 F.2d 1558, 1559-60 (Fed. Cir. 1988); *Sodexho Marriott Mgmt., Inc. v. United States*, 61 Fed. Cl. 229, 241 (2004)).[7]

The first and third elements required for transfer are satisfied here. First, the court has established that it lacks jurisdiction to hear Mr. Straughter's claims because they are time-barred. Additionally, transfer would be in the interest of justice because Mr. Straughter has not yet had an opportunity to have his claims heard by a court on the merits. *See Galloway Farms, Inc. v. United States*, 834 F.2d 998, 1000 (Fed. Cir. 1987) ("The phrase 'if it is in the interest of justice' relates to claims which are nonfrivolous and as such should be decided on the merits") (citing *Zinger Constr. Co. v. United States*, 753 F.2d 1053, 1055 (Fed. Cir. 1985)); *cf. Johnson*, 105 Fed. Cl. 85 (declining to transfer case where the plaintiff had already brought two actions in the

---

[6]Given the resolution of Mr. Straughter's claims on jurisdictional grounds, the court will not address the government's contentions that Mr. Straughter failed to state a claim upon which relief may be granted or that it is entitled to judgment upon the administrative record. *See* Def.'s Mot. at 9, 11.

[7]28 U.S.C. § 1631 provides, in relevant part:

Whenever a civil action is filed in a court as defined in section 610 of this title . . . and th[e] court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

28 U.S.C. § 1631.

transferee court on the same subject).[8]

The second element, however, is not met in this instance because there is no alternative federal court in which Mr. Straughter could have originally filed his claims as currently pled. Generally, two distinct avenues exist for current and former service members to bring civil actions against the United States in federal court: (1) the Tucker Act, 28 U.S.C. § 1491, or the Little Tucker Act, 28 U.S.C. §1346(a)(2); and (2) the Administrative Procedure Act (APA), 5 U.S.C. §§ 701-706, and the federal question jurisdictional statute, 28 U.S.C. § 1331. *See, e.g., Tootle v. Sec'y of Navy*, 446 F.3d 167 (D.C. Cir. 2006); *Randall v. United States*, 95 F.3d 339 (4th Cir. 1996); *Kidwell v. Dep't of Army, Bd. for Correction of Military Records*, 56 F.3d 279 (D.C. Cir. 1995); *Ward v. Brown*, 22 F.3d 516 (2d Cir. 1994); *Mitchell*, 930 F.2d 893.[9] Both the APA and the Tucker Act waive the sovereign immunity of the federal government in certain circumstances. *See Randall*, 95 F.3d at 345. The Tucker Act waives the government's sovereign immunity only with respect to claims deriving from a money-mandating source of law and grants this court exclusive jurisdiction over claims exceeding $10,000. *See Mitchell*, 930 F.2d at 894 n.2. Under the Tucker Act, in a military pay case, this court is authorized to award injunctive relief only when the injunction is "an incident of and collateral to" and award of monetary relief. *See* 28 U.S.C. § 1491(a)(2). By contrast, the APA's waiver of sovereign immunity is limited to cases seeking relief "other than money damages." 5 U.S.C. § 702. In addition, review under the APA is available only for "final agency action *for which there is no other adequate remedy in a court*," 5 U.S.C. § 704 (emphasis added), which has been interpreted by some, but not all, courts to preclude judicial review under the APA when this court may award, or might have awarded, an adequate remedy under the Tucker Act. *Compare Ward*, 22 F.3d at 519 ("[R]egardless of the amount in controversy, an action in a district court is proper under the federal question jurisdiction statute, 28 U.S.C. § 1331, if a statute other than the Tucker Act [including the APA] provides the necessary waiver of sovereign immunity."), *and C.H. Sanders Co. v. BHAP Hous. Dev. Fund Co.*, 903 F.2d 114, 119 (2d Cir. 1990) ("[T]he Tucker Act provides merely one limited waiver of sovereign immunity."), *with Alabama Rural Fire Ins. Co. v. Naylor*, 530 F.2d 1221, 1230 (5th Cir. 1976) ("[T]he availability of a remedy in the Court of [Federal] Claims under the Tucker Act has been held to be an adequate remedy [under Section 704 of the APA]"); *Randall*, 95 F.3d at 346; *Mitchell*, 930 F.2d at 897.

Accordingly, because Mr. Straughter in his complaint specifically requests damages in an amount "exceeding $10,000," Compl. at 1, "[his] money-based complaint could not have been brought in the district court in the first instance," *Martinez*, 333 F.3d at 1320. As a consequence,

---

[8]Notably, Mr. Straughter was specifically advised by the Correction Board that he could seek review by this court. *See* AR 78 (Letter from LoGrande to Straughter (June 12, 2014)) ("[P]ursuant to 5 U.S.C. § 701, et. seq. and 28 U.S.C. § 1491, Congress authorizes applicants, such as yourself, to pursue review of final [Board] decisions through the U.S. Court of [Federal] Claims or appropriate U.S. District Court.")).

[9]The APA entitles a person claiming to have suffered a legal wrong because of agency action to judicial review of that action, 5 U.S.C. § 702, provided that the claim has first been brought before a relevant agency and the agency has issued a final decision or disposition, 5 U.S.C. § 704.

the court "lack[s] authority under [S]ection 1631 to transfer it to a district court at this juncture." *Id.*

This court cannot address whether Mr. Straughter may initiate a new action in the federal district court in the Central District of California under the general question statute and the APA if he amends his complaint by limiting it to request solely nonmonetary relief.[10] At least some courts adhere to a "strict pleading requirement," implicating Tucker Act jurisdiction only where monetary damages are explicitly requested in the complaint. *See Kidwell*, 56 F.3d at 284 ("[A]s long as the sole remedy requested is declaratory or injunctive relief that is not 'negligible in comparison' with the potential monetary recovery, . . . we respect the plaintiff's choice of remedies and treat the complaint as something more than an artfully drafted effort to circumvent the jurisdiction of the Court of Federal Claims." ) (citations omitted); *see also Tootle*, 446 F.3d at 174-75 (D.C. Cir. 2006) (noting a determination that plaintiff is "unfit for duty" and eligible for retirement would be of significant non-monetary value). Should Mr. Straughter bring a claim under the APA, his action may not be time-barred. Claims brought under the APA, while subject to a six-year statute of limitations period set forth in 28 U.S.C. § 2401, accrue on the date of "final agency action." 5 U.S.C. § 704; *see, e.g., Sierra Club v. Slater*, 120 F.3d 623, 631 (6th Cir. 1997). Here, it appears that Mr. Straughter received notice of the Board's final decision in 2013. *See* AR 75 ("Absent judicial action, the Air Force considers your [Board] decision final."); *see also* AR 78.[11] Nonetheless, a statutory time-limitation on seeking review from a correction board would have to be taken into account. *See* 10 U.S.C. §1553(a) ("A motion or request for review [by a correction board] must be made within 15 years after the date of discharge or dismissal.").

---

[10]The Central District of California is the federal district that encompasses Mr. Straughter's stated place of residence.

[11]After a suit for back pay has been dismissed in this court because the limitations period has expired, the ability of a plaintiff to file an action in federal district court under the APA seeking reinstatement and a correction of military records where back pay is not explicitly requested may be an open question in the Court of Appeals for the Ninth Circuit. *Compare Ward*, 22 F.3d at 519-20 (holding former nurse's claims challenging discharge were proper under the APA because the APA provided waiver of sovereign immunity separate from that supplied by the Tucker Act); *with Martinez*, 333 F.3d at 1320 (noting that for a plaintiff requesting both monetary and nonmonetary damages, "[t]he fact that the complaint was untimely filed in the Court of Federal Claims does not mean that court could not offer a full and adequate remedy [under 5 U.S.C. § 704]; it merely means that [plaintiff] did not file his complaint in time to take advantage of that remedy."); *Randall*, 95 F.3d at 347-48 (holding that review of serviceman's case was proper under the APA because injunctive relief was the "essence" of his complaint but noting "[t]his case is different from a case where the plaintiff brings an action . . . *after* he has already been discharged" because "[i]n such a case, a successful plaintiff has a cause of action for back pay") (emphasis in original); *and Mitchell*, 930 F.2d 897 (holding service member's suit seeking active duty credit and back pay would receive adequate review under the Tucker Act, triggering Section 704 of the APA to bar APA waiver of sovereign immunity).

## CONCLUSION

For the reasons stated, the government's motion to dismiss is GRANTED, and Mr. Straughter's complaint is dismissed pursuant to RCFC 12(b)(1) for lack of subject matter jurisdiction.  The clerk shall enter judgment in accord with this disposition.

No costs.

It is so **ORDERED**.

_____
Charles F. Lettow
Judge